**HEARTLAND BY–PRODUCTS, INC., Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant–Appellant,**

**and**

**United States Beet Sugar Association, Defendant–Appellant.**

**Nos. 00–1287, 00–1289.**

United States Court of Appeals, Federal Circuit.

Aug. 30, 2001.

Simeon M. Kriesberg, Mayer, Brown & Platt, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Kathryn Schaefer and Andrew A. Nicely. Of counsel on the brief were David Serko, Daniel J. Gluck, and Jerome L. Hanifin, Serko & Simon LLP, of New York, NY.

Aimee Lee, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, NY, argued for defendant-appellant United States. With her on the brief were David M. Cohen, Director, Department of Justice, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, of New York, NY. Of counsel on the brief were Karen P. Binder, Assistant Chief Counsel; International Trade Litigation; and Yelena Slepak, Office of Assistant Chief Counsel, U.S. Customs Service, of New York, NY. Also of counsel on the brief were Allan Martin, Associate Chief Counsel; and Ellen Daly, Office of Chief Counsel, U.S. Customs Service, of Washington, DC.

Lewis J. Liman, Wilmer, Cutler & Pickering, of New York, NY, argued for defendant-appellant United States Beet Sugar Association. Of counsel on the brief were Amber L. Cottle, and Deirdre A. McDonnell, Wilmer, Cutler & Pickering, of Washington, DC.

Barry Nemmers, Member of the Board of Directors, American Association of Exporters and Importers, for amicus curiae

American Association of Exporters and Importers.

Daniel J. Plaine, Gibson, Dunn & Crutcher LLP, of Washington, DC, for amici curiae Florida Crystals Corporation, et al.

Robert W. Johnson II, Johnson, Rogers & Clifton, L.L.P., of Washington, DC, for amicus curiae International Sugar Policy Coordinating Commission of the Dominican Republic.

Peter Buck Feller, McKenna & Cuneo, L.L.P., of Washington, DC, for amicus curiae Sweetner Users Association. With him on the brief was Kurt J. Hamrock.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

SCHALL, Circuit Judge.

The United States and the United States Beet Sugar Association (collectively, "Appellants") appeal the decision of the United States Court of International Trade in favor of Heartland By–Products, Inc. ("Heartland") that declared that the classification of Heartland's sugar syrup by the United States Customs Service ("Customs") under subheadings 1702.90.10/20 of the Harmonized Tariff Schedule of the United States ("HTSUS") was unlawful and that held that the syrup is properly classified under subheading 1702.90.40 of the HTSUS. *Heartland By–Prods., Inc. v. United States,* 74 F.Supp.2d 1324 (Ct. Int'l Trade 1999). Because we conclude that Customs' classification ruling has power to persuade under *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), we reverse.

## BACKGROUND

### I.

Under the HTSUS, the volume of sugar imported into the United States is controlled by a Tariff Rate Quota ("TRQ"). *See* Additional U.S. Notes, 17 HTSUS (2000). Sugar entered under the quota is subject to a lower rate of duty than sugar entered above the quota. *Id.* Sugar syrups are classified under heading 1702:

**1702**

Other sugars, including chemically pure lactose, maltose, glucose and fructose, in solid form; sugar syrups not containing added flavoring or coloring matter; artificial honey, whether or not mixed with natural honey; caramel:

\* \* \*

**1702.90**

Other, including invert sugar:

Derived from sugar cane or sugar beets:

Containing soluble non-sugar solids (excluding any foreign substances that may have been added or developed in the product) equal to 6 percent or less by weight of the total soluble solids:

**1702.90.05**

Described in general note 15 of the tariff schedule and entered pursuant to its provisions.[1]

**1702.90.10**

Described in additional U.S. note 5 to this chapter and entered pursuant to its provisions.[2]

**1702.90.20**

Other.

Other:

**1702.90.35**

Invert molasses.

**1702.40**

---

**1.** General note 15 pertains to the TRQ.

**2.** Additional U.S. note 5 pertains to the TRQ.

Other.

HTSUS (2000). Syrups classified under 1702.90.10 HTSUS and 1702.90.20 HTSUS are subject to the TRQ, whereas syrups classified under 1702.90.40 HTSUS are not.

## II.

Heartland was established in 1995 in Taylor, Michigan. Shortly after being established, Heartland sought an advance ruling from Customs regarding the classification of a sugar syrup it was considering importing from Canada. *See* 19 C.F.R. § 177.1 (1995) (providing for requests for tariff classification rulings). Heartland described the sugar syrup as consisting of sugar, water, and soluble non-sugar solids consisting of approximately 70 percent by weight of dissolved solids and approximately 30 percent by weight of water. Heartland indicated that the syrup meets the following analysis, by weight, on a dry solid basis:

approximately 93.5% but not equal to more than 94% of sugar cane and/or beet origin of which unintentionally created reducing sugars (invert) make up less than 5%

and

approximately 6.5% but not equal to or less than 6.0% of soluble non-sugar solids of cane and/or beet origin.

Heartland stated that it believed that the syrup should be classified under 1702.90.40 HTSUS. Heartland explained that the syrup falls under 1702.90 HTSUS because it is not a syrup of lactose, maple, glucose or fructose and, therefore, does not fall under the prior subheadings of 1702. Heartland asserted that the syrup falls under 1702.90.40 HTSUS because it contains more than 6% by weight of soluble, non-sugar solids with no foreign substances, and is not a molasses.

In response to Customs' request for information on how the syrup is made, Heartland described the manufacturing process as follows:

1. Granular raw sugar would be combined with molasses, of cane or beet origin, in the correct proportions to produce a brown sugar of approximately 93 percent polarity. To ensure adequate mixing, the granular raw sugar would be sprayed with the molasses and run through a blending screw.

2. The 93 percent polarity brown sugar would then be dissolved in hot water within an agitated and heated vessel to produce a simple syrup of approximately 70% by weight dissolved solids.

Customs agreed with Heartland's proposed classification, and issued a ruling letter classifying the syrup under 1702.90.40 HTSUS. N.Y. Ruling Letter 810329 (May 15, 1995) ("New York Ruling Letter"). With this classification, Heartland's sugar syrup was not subject to the TRQ.

Relying on this ruling, Heartland established a business around the manufacture and importation of the sugar syrup. Heartland began its refining operations in mid–1997. In September of 1997, Customs investigated Heartland's operations in response to information from an industry source that Heartland might be importing sugar syrup in an attempt to avoid the TRQ. Customs could not substantiate the allegations; it therefore closed its investigation in October of 1997 without taking any action against Heartland.

## III.

On January 14, 1998, the United States Cane Sugar Refiners' Association, the United States Beet Sugar Association, and their member companies (collectively, the

"Associations") filed a petition under 19 U.S.C. § 1516 and/or 19 U.S.C. § 1625, seeking reclassification of Heartland's sugar syrup under either 1702.90.20 HTSUS or 1702.90.58/54 HTSUS.[3] The Associations argued that the classification of Heartland's sugar syrup under 1702.90.40 HTSUS defeated the purpose of the 6% solids content provision of 1702.90.20 HTSUS. The Associations argued that the provision was adopted to ensure that sugar syrups containing less than 6% non-sugar solids would be subject to the TRQ because such syrups compete directly with sugar. The Associations argued that Heartland's sugar syrup should be classified under 1702.90.20 HTSUS because it is derived from sugar cane or sugar beets and contains less than six percent soluble non-sugar solids. Alternatively, the Associations argued that Heartland's sugar syrup should be classified under 1702.90.54/58 HTSUS, which encompasses certain "Blended syrups described in additional U.S. note 4 to chapter 17," because it meets the description in Additional U.S. note 4 of a syrup that contains "sugars derived from sugar cane or sugar beets, capable of being further processed or mixed with similar or other ingredients, and not prepared for marketing to the ultimate consumer in the identical form and package in which imported."

On June 9, 1999, Customs published notice of its intent to revoke the New York Ruling Letter and to reclassify Heartland's sugar syrup under 1702.90.10 HTSUS or 1702.90.20 HTSUS, depending on whether the quantitative limitations of the TRQ had been met. *Proposed Revocation of Ruling Letter & Treatment Relating to Tariff Classification of Certain Sugar Syrups*, 33 Cust. Bull. No. 22/23, at 52 (June 9, 1999). In the proposed ruling letter, Customs determined that "there are no commercial identities or commercial uses for the syrups as imported other than the extraction of the molasses after importation, and the subsequent use of the syrups in the same manner as other syrups classified in provisions of the tariff that are subject to [the TRQ]." *Id.* at 57. Customs reasoned that, as a matter of law, it could consider the product's uses when determining its proper classification. *Id.* Customs stated that "it was the intent of the Presidential Proclamations which established the quotas to include the sugar syrups in question [in the TRQ.]" *Id.* at 59. Customs determined that Heartland's sugar syrup would have been subject to a quota under the Tariff Schedules of the United States ("TSUS"), which were in effect prior to the adoption of the HTSUS, and that conversion to the HTSUS was not intended to change the applicability of the sugar quotas to products such as Heartland's sugar syrup, particularly where Heartland was subjecting its product to "artificial processing . . . to avoid the quota." *Id.* at 59–60. Customs also determined that the added molasses is a "foreign substance" relative to the sugar to which it is added and, therefore, should not be included when determining the soluble solids content of the sugar syrup under 1702.90.10 HTSUS and 1702.90.20 HTSUS. *Id.* at 60–61. In support of its determination, Customs stated that al-

---

**3.** Section 1516 permits an interested party to submit a petition to the Secretary of the Treasury setting forth the classification under which it believes imported merchandise should be classified. 19 U.S.C. § 1516(a) (1994). Section 1625 requires Customs to publish any proposed interpretative ruling or decision which would modify or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days, and to give interested parties at least 30 days to submit comments on the proposed ruling or decision. 19 U.S.C. § 1625(c) (1994). By invoking § 1625, the Associations were inviting Customs to independently review the classification of Heartland's sugar syrup.

though molasses is derived from sugar cane or sugar beets, it is derived only as a by-product of the refining process. *Id.* at 61. Customs also noted that molasses is classified under a separate subheading from sugar syrups, 1703 HTSUS. *Id.*

During the comment period, Customs received numerous comments from members of domestic and foreign sugar industries in support of the reclassification of Heartland's sugar syrup. Customs also received comments opposing the reclassification. Many of the opposing comments were submitted by groups of trade associations, importers and exporters, who opposed Customs' decision to use § 1625(c) instead of § 1516 to revoke the New York Ruling Letter, who opposed Customs' decision to revoke an interpretative ruling without a compelling reason for doing so, and who opposed Customs' departure from the rule that importers may fashion their goods to take advantage of favorable duty provisions. Heartland also submitted comments opposing the reclassification of its sugar syrup. Heartland argued, *inter alia,* that the New York Ruling Letter was obtained pursuant to Customs' established procedures and should be upheld, that the New York Ruling Letter correctly classified Heartland's sugar syrup, that the proposed ruling impermissibly focused on the post-importation use of the syrup, that the syrup has well-recognized commercial uses, that neither the TSUS nor the purpose of the TRQ govern the proper classification of the sugar syrup, and that the added molasses is not a foreign substance that should be excluded from the soluble solids content calculation required for classification under 1702.90.10 HTSUS or 1702.90.20 HTSUS.

On September 8, 1999, Customs issued a final notice revoking the New York Ruling Letter and classifying Heartland's sugar syrup under 1702.90.10/20 HTSUS, effective November 8, 1999. *Revocation of Ruling Letter & Treatment Relating to Tariff Classification of Certain Sugar Syrups,* 33 Cust. Bull. No. $^{35}/_{36}$, at 41 (Sept. 8, 1999) ("*Revocation of Ruling Letter*"). The revocation ruling addresses two legal issues raised by the comments submitted in response to the proposed revocation: Customs' authority to revoke the prior ruling under 19 U.S.C. § 1625 and Customs' authority to consider the commercial identity of imported merchandise when determining its classification. *Id.* at 42–45. With regard to the former issue, Customs emphasized its mandate to correctly administer the tariff laws of the United States, and its authority to take corrective action when it learns that merchandise is improperly classified. *Id.* at 43. Customs stated that the existence of a petition under § 1516 did not preclude it from acting under § 1625. *Id.* In discussing the latter issue, Customs determined that the addition of molasses to raw sugar by Heartland is not a "genuine step" in the manufacturing process, but instead amounts to a " 'disguise or artifice' intended to escape a higher rate of duty such as a quota or tariff rate." *Id.* at 44–45. Customs reasoned that, under such circumstances, it is permitted to inquire into the commercial identity of the imported merchandise. *Id.*

With regard to the foreign nature of the added molasses, Customs stated that the step of "mix[ing] molasses with sugar is not a refining process for raw sugar, and the addition of water to such a mixture does not create a 'sugar syrup' derived from a refining process from sugar cane or sugar beet." *Id.* at 53. Customs concluded that molasses, with its impurities, is a foreign substance that must be excluded from the solids content calculation of 170290.10/20 HTSUS. *Id.* Customs determined that the non-sugar solids content-excluding the molasses-of Heartland's sugar syrup is less than 6%. *Id.* Therefore,

Customs concluded, the syrup is properly classified under 1702.90.10/20 HTSUS. *Id.*

## IV.

On September 20, 1999, Heartland filed a complaint in the Court of International Trade challenging the classification of its sugar syrup under 1702.90.10/20 HTSUS and seeking a preliminary injunction to prevent Customs from enforcing the revocation ruling. The court exercised its jurisdiction under 28 U.S.C. § 1581(h) (1994), which permits the court to hear challenges to the classification of goods prior to their importation if the party bringing the challenge demonstrates that it will suffer irreparable harm if judicial review is not obtained prior to importation. *Heartland,* 74 F.Supp.2d at 1326, 1329–32. Pursuant to 28 U.S.C. § 2640(e) (1994), the court reviewed the revocation ruling under the standard of review of the Administrative Procedure Act, 5 U.S.C. § 706. *Id.* at 1329. Thus, it considered whether Customs' decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.*

The court held that the revocation ruling was "not in accordance with law" because Heartland's sugar syrup is properly classified under 1702.90.40 HTSUS. *Id.* at 1332. The court determined that the plain language of that subheading encompasses the sugar syrup, as the syrup was described in Heartland's request for an advance classification ruling. *Id.* The court rejected Customs' reasoning that the molasses is a foreign substance that should be excluded from the solids content calculation, finding that the record demonstrated that the molasses is made from cane or beet sugar and that the sugar, molasses, and syrup "all have the same chemical ingredients, including impurities that naturally occur in sugar." *Id.* at 1333–34. The court reasoned that because raw sugar

itself contains molasses, combining raw sugar with additional molasses does not amount to an addition of a foreign substance. *Id.* at 1134. The court stated that Customs' conclusion to the contrary "was simply wrong." *Id.* The court also stated that "Customs' interpretation of 'foreign substances' to include anything that is itself 'derived from sugar cane or sugar beets' is unreasonable and an abuse of discretion." *Id.*

The court also rejected Customs' determination that the addition of molasses amounted to an artifice or disguise. *Id.* at 1335. The court noted that Heartland never falsified or concealed the identity of its sugar syrup, its method of manufacture, or its use. *Id.* at 1337. The court determined that evidence of record demonstrated a clear commercial purpose for the addition of molasses, citing testimony to the effect that molasses may be added to adjust the purity of the product during crystallization or to produce a final product of a particular polarity. *Id.* at 1335. The court also determined that the evidence of record indicated that Heartland's sugar syrup results from an intermediate stage of the refining process, citing testimony to the effect that "the process of combining granular raw sugar with molasses, adding water, and heating is common in sugar refining operations." *Id.* at 1338. The court noted that the only evidence indicating that adding molasses to sugar is not a legitimate commercial process relates to the addition of molasses to refined sugar, not the addition of molasses to raw sugar, as is done by Heartland. *Id.* The court therefore concluded that Customs' determination that Heartland had engaged in an artifice and disguise and its subsequent consideration of the post-importation use of the syrup was "an abuse of discretion and otherwise not in accordance with law." *Id.* at 1338–39.

The court therefore granted Heartland's motion, declared the revocation ruling unlawful, and ordered that the sugar syrup be classified under 1702.90.40 HTSUS. *Id.* at 1345. The United States and the United States Beet Sugar Association appeal the court's decision. We have jurisdiction over their appeal pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

### I.

In reviewing a decision of the Court of International Trade, this court usually applies anew the statutory standard of review applied by that court to the agency's decision. *Inland Steel Indus. v. United States*, 188 F.3d 1349, 1359 (Fed.Cir.1999). Pursuant to 28 U.S.C. § 2640(e), the court applied the APA standard of review to Customs' classification of Heartland's sugar syrup, determining whether the revocation ruling was " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Heartland*, 74 F.Supp.2d at 1329 (quoting 5 U.S.C. § 706(2)(A)). Subsequent to the court's decision, however, the Supreme Court issued *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), in which it held that Customs classification rulings may merit deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). We therefore will evaluate Customs' classification of Heartland's sugar syrup under the standards required by *Mead* and *Skidmore*, as discussed in more detail below.

Appellants argue that the court failed to give the revocation ruling the deference required by *Mead* and *Skidmore*. Specifically, Appellants contend that the court improperly substituted its own judgment for that of Customs instead of giving appropriate weight to Customs' findings. In

response, Heartland argues that the revocation classification ruling is entitled to minimal deference under *Mead* and *Skidmore* because the reasoning behind the ruling is not persuasive, and because it unjustifiably revoked a prior classification ruling. Moreover, Heartland asserts that because there is no dispute over the nature of its sugar syrup, the correct classification of the syrup presents a question of law over which the court was entitled to exercise *de novo* review.

On the merits of the court's decision, Appellants raise two main arguments. First, they argue that Customs' finding that Heartland improperly engaged in an artifice or disguise designed to avoid the TRQ was not arbitrary and capricious and, therefore, should not have been disturbed by the court. Appellants assert that Customs was entitled to consider the commercial identity of Heartland's sugar syrup, and argue that the record supports Customs' findings that there is no commercial purpose for adding molasses to sugar and that the sugar syrup has no commercial identity. In response, Heartland argues that neither the pre-importation manufacturing process nor the processing that Heartland performs in the United States involves any artifice or disguise. Heartland also argues that the cases cited by Customs do not support its finding of artifice or disguise, and that its sugar syrup indeed has a commercial use, although that use is irrelevant to the correct classification of the sugar syrup.

Appellants' other main argument is that the court erred when it determined that the molasses in Heartland's sugar syrup is not a "foreign substance" as that term is used in 1702.90.10/20 HTSUS. Appellants argue that Customs' interpretation of the term "foreign substances" is entitled to deference. Appellants assert that the plain language of the HTSUS provisions,

the structure of 1702.90 HTSUS, and the legislative history of the HTSUS provisions support Customs' determination that the term "foreign substances" refers to substances that are foreign to the syrup at its current stage of manufacture, such as the molasses Heartland adds to raw sugar. In response, Heartland contends that Customs' determination that molasses, which is derived from sugar cane or sugar beets, is "foreign" to a sugar syrup that also is derived from sugar cane or sugar beets is absurd because the molasses and the sugar syrup have common ingredients. Heartland also contends that it is the physical constitution of the sugar syrup, not its method of manufacture, that must be the basis of classification under 1702.90 HTSUS.

Appellants also challenge the authority of the Court of International Trade to determine the correct classification of Heartland's sugar syrup. Appellants argue that because Heartland brought this action under 28 U.S.C. § 1581(h) and because the court was required by 28 U.S.C. § 2640(e) to apply the APA standard of review, the court only could vacate and remand Customs' decision; it could not itself classify the sugar syrup. Heartland responds to this argument by emphasizing the court's duty to determine the proper classification of imported merchandise, and by citing the court's authority under 28 U.S.C. § 2643(c)(4) (1994) to "order the appropriate declaratory relief" in any action brought under § 1581(h).

For the reasons that follow, we determine that Customs' interpretation of the term "foreign substances" in 1702.90.10/20 HTSUS as including the molasses which Heartland adds to its sugar syrup merits deference under *Skidmore* because of its persuasiveness. We therefore uphold the classification of the syrup under 1702.90.10/20 HTSUS. In view of that

holding, we need not address the other arguments raised by the parties on appeal.

## II.

The issue before the Supreme Court in *Mead* was "whether a tariff classification ruling by the United States Customs Service deserves judicial deference." *Mead,* 533 U.S. at ——, 121 S.Ct. at 2168. The Court determined that Customs "classification rulings are best treated like 'interpretations contained in policy statements, agency manuals, and enforcement guidelines.' They are beyond the *Chevron* pale." *Id.* at 2175 (quoting *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)) (internal citation omitted). The Court continued,

> To agree ... that Customs ruling letters do not fall within *Chevron* is not ... to place them outside the pale of any deference whatever. *Chevron* did nothing to eliminate *Skidmore*'s holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires.

*Id.* (quoting *Skidmore,* 323 U.S. at 139–40, 65 S.Ct. 161) (internal citations omitted). Commenting on the highly detailed nature of the applicable regulatory scheme and Customs' specialized experience in classifying goods, the Court determined that "[a] classification ruling ... may ... at least seek respect proportional to its 'power to persuade.'" *Id.* at 2175–76 (quoting *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161, and citing *Christensen,* 529 U.S. at 587, 120 S.Ct. 1655; *id.* at 595, 120 S.Ct. 1655 (Stevens, J., dissenting); *id.* at 596–97, 120 S.Ct. 1655 (Breyer, J., dissenting)). The

Court stated that "[s]uch a ruling may surely claim the merit of its writer's thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of weight." *Id.* at 2176.

■ Although the classification ruling before the Court in *Mead* was not issued pursuant to 19 U.S.C. § 1625(c) and, therefore, was not subject to a public notice and comment procedure, we read the Court's holding as applying to all Customs classification rulings. *See id.* at 2175 ("The statutory changes [requiring a notice-and comment period when Customs modifies or revokes a prior classification ruling] reveal no new congressional objective of treating classification decisions generally as rulemaking with force of law, nor do they suggest any intent to create a *Chevron* patchwork of classification rulings, some with force of law, some without. In sum, classification rulings ... are beyond the *Chevron* pale."). We therefore will review the classification of Heartland's sugar syrup in accordance with *Mead* and *Skidmore.*

## III.

■ *Mead* indicates that the following factors are to be evaluated when determining the degree of deference to accord a Customs classification ruling: "its writer's thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of weight." *Mead,* 533 U.S. at ——, 121 S.Ct. at 2176. Those factors echo the factors set forth in *Skidmore* for determining the weight to accord an administrative ruling, interpretation, or opinion: "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. Applying these factors to the classification of Heartland's

sugar syrup, we determine that the revocation ruling is entitled to deference because of its persuasiveness.

The revocation ruling was issued pursuant to a notice and comment process, during which numerous members of the sugar industry, including the United States Beet Sugar Association and Heartland, submitted comments in support of and in opposition to the ruling. Customs responded to the two main legal issues raised by the comments when it issued the ruling. *Revocation of Ruling Letter,* 33 Cust. Bull. No. 35/36 at 42–47. We therefore conclude that Customs gave thorough consideration to the ruling.

The revocation ruling is supported by a logical and well-reasoned explanation published in the Customs Bulletin. *Id.* at 42–54. Specifically, on the issue of whether the term "foreign substances" encompasses the molasses Heartland adds to raw sugar to make its sugar syrup, Customs explained:

> The addition of the molasses to the sugar is a foreign substance [sic] containing impurities in producing the sugar syrup and, therefore, we exclude the molasses with impurities in calculating the 6% rule....
>
> There is a view that since the molasses is naturally found in sugar cane or sugar beets, it meets the requirements of subheadings 1702.90.10/20 HTSUS, in that it (molasses) is derived also from sugar cane or sugar beets. As stated above, molasses is derived as a by-product from the refining of sugar cane or sugar beets and it is not derived as sugar from the refining of sugar cane or sugar beets. Thus, molasses syrups are classified in heading 1703, HTSUS, and not in heading 1702, HTSUS.

*Id.* at 53.

We also note that Customs has "specialized experience" in classifying goods,

*Mead,* 533 U.S. at ——, 121 S.Ct. at 2175, which lends further persuasiveness to its ruling.

■ The only factor that weighs against giving deference to the revocation ruling is the ruling's lack of consistency with an earlier pronouncement, the New York Ruling Letter. The revocation ruling, of course, changed the classification of Heartland's sugar syrup. However, because § 1625(c) permits Customs to revoke a prior classification of goods, inconsistency with a prior ruling is not itself a basis for denying all deference to a revocation ruling. Moreover, the New York Ruling Letter was not issued pursuant to a notice and comment process and did not address the specific issue addressed in the revocation ruling-whether the molasses Heartland adds to raw sugar is a foreign substance within the meaning of 1702.90.10/20 HTSUS.

Under these circumstances, we conclude that the revocation ruling has "power to persuade." *Mead,* 533 U.S. at ——, 121 S.Ct. at 2176; *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161.

As discussed above, the relevant provision of the HTSUS does not indicate to what a substance must be "foreign" in order to be a "foreign substance" excluded from the solids content calculation of 1702.90.10/20 HTSUS. Customs therefore had to interpret the term "foreign substances" in order to classify Heartland's sugar syrup. Customs determined that the term refers to substances that are foreign to the sugar syrup at the relevant stage of the refining process. Customs concluded that, while molasses is a by-product of the sugar refining process, "[t]he mix[ing] of molasses with sugar is not a refining process for raw sugar." *Revocation of Ruling Letter,* 33 Cust. Bull. No. 35/36 at 53. Customs therefore determined that the molasses Heartland adds to raw sugar to make its sugar syrup is a foreign substance that must be excluded from the solids content calculation of 1702.90.10/20 HTSUS.

■ Giving the revocation ruling the deference it is due under *Mead* and *Skidmore,* we see no reason to disturb Customs' interpretation. The fact that molasses and raw sugar both are derived from sugar cane or sugar beets does not undermine Customs' interpretation. Nor do we believe that the fact that molasses and raw sugar both are "composed of the same chemical ingredients in varying proportions," *Heartland,* 74 F.Supp.2d at 1334, or the fact that the raw sugar to which Heartland adds the molasses itself contains some molasses prevents molasses from being a foreign substance vis-à-vis raw sugar. When the purification of a raw product results in the production of a by-product, it is not illogical or unreasonable to conclude that the addition of that by-product to a purified or partially-purified raw product amounts to the addition of a foreign substance.

The Court of International Trade went too far when it determined that, because 1702.90 HTSUS encompasses sugar syrups " 'derived from sugar cane or sugar beets,' " any substance that also is " 'derived from sugar cane or sugar beets' ... cannot be 'foreign' to HTSUS 1702.90." *Id.* at 1334–35 (quoting 1702.90 HTSUS). The explanatory notes cited by the court do not support its narrow construction. Explanatory Note 17.02(B)(3), which provides examples of sugar syrups that fall under 1702 HTSUS, states that "golden syrup" falls under 1702 HTSUS. The court noted that golden syrup is a table syrup made from molasses, and considered that the inclusion of golden syrup under 1702 HTSUS undermined Customs' determination that molasses is a "foreign substance" under 1702.90.10/20 HTSUS. *Id.*

at 1332–33. However, the note's discussion of golden syrup does not shed light on the issue before us because the note addresses classification under heading 1702 in general, not classification under subheading 1702.90.10/20 specifically. Moreover, the note does not address a syrup made by combining raw sugar with molasses; instead, golden syrup is described in the note as being " 'made from the syrup remaining during sugar refining after crystallization and separation of refined sugar, or from cane or beet sugar, by inverting part of the sucrose or by the addition of invert sugar.' " *Id.* at 1333 (quoting HTSUS Explanatory Note 17.02(B)(3)).

The court also cited Explanatory Note 17.02(B)(2), which states that "[j]uices and syrups obtained during the extraction of sugars from sugar beet, sugar cane, etc.," fall under 1702 HTSUS, and that these syrups "may contain pectin, albuminoidal substances, mineral salts, etc., as impurities." *Id.* at 1335. The court determined that because this note permits products with the same impurities as molasses to be classified under 1702 HTSUS, it undermines Customs' determination that molasses is a foreign substance. *Id.* This note, however, does not indicate whether the molasses added to raw sugar to make Heartland's sugar syrup is a "foreign substance" under 1702.90.10/20 HTSUS because it does not set forth under which subdivision of 1702 HTSUS the described sugar syrups are classified. Moreover, the impurities described in the note are naturally present in the juices and sugar syrups, not added to raw sugar like the molasses at issue in this case.

Heartland does not argue that its sugar syrup contains less than 6% by weight of soluble non-sugar solids when the weight of the molasses solids is excluded. Therefore, in view of our determination that

Customs' interpretation of the term "foreign substances" should not be disturbed, we uphold the revocation ruling classifying Heartland's sugar syrup under 1702.90.10/20 HTSUS.

## CONCLUSION

For the foregoing reasons, the decision of the Court of International Trade declaring the revocation ruling unlawful and ordering that Heartland's sugar syrup be classified under 1702.90.40 HTSUS is

*REVERSED.*

## COSTS

Each party shall bear its own costs.

FRIEDMAN, Senior Circuit Judge, concurring.

I reach the same result the Court does the judgment of the Court of International Trade is reversed but get there by a different route.

The syrup Heartland imported from Canada had molasses added to it before importation. Upon receiving the syrup in the United States, Heartland first removed the molasses and then refined the remaining syrup. The removed molasses was returned to Canada but was again used the same way by adding it to other sugar syrup. As far as appears, this chain continued indefinitely.

Heartland makes no claim that the presence of the molasses in the sugar during the syrup's journey from Canada to the United States in any way aided, improved or facilitated the refining of the sugar syrup after the molasses had been removed. It does not state, or even suggest, that if the sugar syrup it had imported had not contained the molasses, it would temporarily have added molasses in the United States and then removed it prior to processing.

Since the addition and removal of the molasses from the sugar served no manufacturing or commercial purpose, the conclusion is irresistible that the only purpose of this strange arrangement was to create a fictitious product that, because of the temporary presence of the molasses, qualified for the lower rate of duty on sugar imports containing specified amounts of non-sugar solids.

Almost ninety years ago, the Supreme Court, speaking through then Justice Hughes, pointed out that although "the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported[,] [t]his, of course, does not mean that a prescribed rate of duty can be escaped by resort to disguise or artifice." *United States v. Citroen,* 223 U.S. 407, 414–15, 32 S.Ct. 259, 56 L.Ed. 486 (1912) (internal quotation marks and citations omitted). The Court further recognized that "when the article imported is not the article described as dutiable at a specified rate, it does not become dutiable under the description because it has been manufactured or prepared for the express purpose of being imported at a lower rate." *Id.* at 415, 32 S.Ct. 259.

In revoking the New York Ruling Letter, Customs stated that "the importer has engaged in a process which is not a genuine step in manufacturing or production of an article." 33 Cust. B. & Dec. 41, 44 (1999). It concluded that "the processing in this case is not legitimate tariff engineering. But rather, it is merely 'disguise or artifice' intended to escape a higher rate of duty such as a quota tariff rate." 33 Cust. B. & Dec. at 45. As Customs explained:

> Sugar and molasses are mixed in Canada. Water is then added to the mixture to make a sugar syrup. Subheading 1702.90.10, HTSUS, provides for sugar syrups derived from cane or sugar beets, containing soluble non-sugar solids (excluding any foreign substances that may have been added or developed in the product) equal to 6 percent or less by weight of the total soluble solids, subject to tariff rate quotas. The molasses with its impurities added to the sugar is sufficient to assure that the syrup exceeds the 6 percent limitation so that the syrup is classified in a provision not subject to quota. If the syrup was further used in its condition as imported, in the next step in producing an article of commerce, this may satisfy the tariff engineering concept. However, after importation, the molasses is removed and the sugar is used in the same manner as sugar subject to quota. In its condition as imported, we conclude that there is no commercial use for the syrup as imported. . . .
>
> The recipient of the ruling claims that "[i]n the production of sugar products, both liquid and granular, molasses is frequently used as an ingredient to achieve desired polarities." However, the molasses is added to the sugar in this case to achieve a desired level of soluble non-sugar solids for the avoidance of quota. After importation, the molasses is removed. According to comments from a domestic sugar refiner, it makes no financial sense, absent a desire to avoid the sugar tariff, for a conventional sugar operation to either enrich a liquid (syrup or molasses) stream with sugar or to add molasses to such a stream. Sugar operations separate sugar from the liquid or molasses phase, they do not separate the sugar and then introduce molasses to the sugar, effectively nullifying the refining operation. Consequently, Customs has concluded that this operation is not legitimate tariff engineering.

33 Cust. B. & Dec. at 44–45.

The record supports Customs' foregoing factual statements, and they fully justify

its legal conclusion that Moreland's importation of the sugar syrup with molasses "is merely 'disguise or artifice' intended to escape a higher rate of duty such as a quota tariff rate ." Customs, therefore, was fully justified in revoking the New York Ruling Letter that applied the lower tariff rate based upon such "disguise or artifice." *See* 19 U.S.C. § 1625(c) (prescribing procedures for Customs to modify or revoke a "prior interpretive ruling").

Of course, Heartland built its business in reliance upon the New York Ruling Letter that its imported sugar syrup was entitled to the lower duty. In obtaining that ruling, however, Heartland did not disclose to Customs the true and precise nature of the practice it proposed to follow with regard to the imported syrup. It merely described the composition of the import. If Heartland had fully informed Customs of how it intended to deal with the imported sugar syrup, we now know that Customs would not have ruled the import was subject to the lower duty.

In sum, whatever financial or other problems Heartland now faces because of the revocation of the New York Ruling Letter are the result of its own actions, for which it must bear full responsibility.