# United States Court of Appeals for the Federal Circuit

04-1534

WARNER-LAMBERT COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Patrick D. Gill, Rode & Qualey, of New York, New York, argued for plaintiff-appellant.  With him on the brief were John S. Rode and Eleanore Kelly-Kobayashi.

Bruce N. Stratvert, Attorney, International Trade Field Office, United States Department of Justice, of New York, New York, argued for defendant-appellee.  With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director; and Barbara S. Williams, Attorney in Charge, International Trade Field Office.  Of counsel were Chi S. Choy and Ellen Daly, Attorneys, Office of Assistant Chief Counsel, United States Customs and Border Protection.

Appealed from:  United States Court of International Trade

Senior Judge Thomas J. Aquilino, Jr.

# United States Court of Appeals for the Federal Circuit

04-1534

WARNER-LAMBERT COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: October 13, 2005

_____

Before MAYER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The issue is the validity of the reclassification by the United States Customs Service ("Customs") of imported Vitamin C supplement drops from their previous duty-free status as "medicaments" to dutiable status as "sugar confectionery." The Court of International Trade upheld the reclassification, and we affirm.

I

A. As the Court of International Trade stated, the imported merchandise is lozenges sold in packages under the name "Halls Defense™ Vitamin C Supplement Drops." Warner-Lambert Co. v. United States, 341 F. Supp. 2d 1272, 1273-74 (Ct. Int'l Trade 2004). Although "[e]ach . . . drop (lozenge) contains 60 milligrams of Vitamin C,"

which is "the current recommended daily value of Vitamin C as set by the United States Food and Drug Administration," the drops are composed primarily of sugar and glucose syrup, which together constitute more than 95 percent of each drop. Id. Vitamin C constitutes just under 2 percent of each drop, with the remaining small percentage consisting of citric acid, flavors and color. Id. The drops are sold in various fruit flavors. Id.

The parties do not dispute that "[h]uman beings, unlike many other mammals, are unable to make their own Vitamin C[ ] and therefore[ ] must meet their Vitamin C needs from external sources[,]" and that "Vitamin C is an important part of daily nutrition in that it maintains health and well being." Warner-Lambert, 341 F. Supp. 2d at 1274. The parties also do not challenge the trial court's finding that Vitamin C is "availab[le] . . . in various forms and substances" to meet nutritional needs. See id. at 1275.

In a pre-trial order, the Court of International Trade set forth "uncontested facts," which also included the following:

> Vitamin C prevents scurvy, [which] is the disease caused by the lack of Vitamin C.
> The imported merchandise is not marketed as preventing or curing any disease.

Warner-Lambert's product manager testified that the drops were not marketed with any use in mind, and that to "create the most ubiquitous appeal . . . We just kind of really market this as Vitamin C and allow [consumers] to decide why they want it." Id. at 1282. The packaging for the drops contained the following statement:

> Halls Defense Vitamin C Supplement Drops help keep you going, because each drop delivers 100% of the Daily Value of Vitamin C. So now, your family can soothe their throats with delicious, fruit flavored drops while getting the Vitamin C they need. Assorted Citrus Halls Defense Vitamin C Supplement Drops are available in the following all natural flavors:

Lemon, Sweet Grapefruit, and Orange. Assortment in each package may vary. 100% Daily Value of Vitamin C in each drop.

Id. at 1274.

B. Heading 3004 of the Harmonized Tariff Schedules of the United States ("the tariff schedules") covers "Medicaments . . . consisting of mixed or unmixed products for therapeutic or prophylactic uses, put up in measured doses . . . or in forms or packings for retail sale," which are admitted duty free. In 1988, Customs classified the Vitamin C drops as medicaments under that heading. Headquarters Ruling Letter No. HQ 958150 (April 7, 1998) (referencing Ruling Letter No. NY 832151 (September 21, 1988)).

In April 1998, however, after giving notice of a proposed revocation of that ruling, Customs revoked the ruling and reclassified the drops under heading 1704 of the tariff schedules, which covers "Sugar confectionary (including white chocolate), not containing cocoa." The result was to subject the drops to duty of 6.1 percent. Id.

In a six page detailed letter ruling, Customs explained the reasons for its action. Customs stated that its prior classification of the drops was "based upon the belief that Vitamin C imparted therapeutic or prophylactic character to the merchandise," but that "[a]dditional research indicates that Vitamin C has not been shown in the U.S. to have substances which imbue it with therapeutic or prophylactic properties or uses." Customs noted that the Explanatory Notes (the "official interpretation of the Harmonized System") to heading 3004 stated that the "heading includes pastilles, tablets, drops, etc. of a kind suitable only for medicinal purposes," but that "preparations put up as throat pastilles or cough drops, consisting essentially of sugars . . . and flavouring agents (including substances having medicinal properties . . .) fall in heading 17.04 [sic]." Customs stated that although "drops, suitable only for medicinal purposes, are normally

dispensed with a doctor's prescription, or are only purchased with the intention of curing an ailment," the Vitamin C drops at issue were "sold in a variety of stores together with other sugar-confectionary products 'over the counter' without a prescription."

Customs also noted in the letter that the exterior label of the product stated that "Hall's [sic] Vitamin C Drops are a delicious way to give your family 100% of the Daily Value of Vitamin C . . . . They taste great and soothe your throat. . . ." and that the drops were "available" in various fruit "flavors." Customs concluded that, "[f]rom this it is clear that, although the merchandise may possess medicinal properties, it is being marketed as much for its flavor as for its medicinal value. Thus, it cannot be said that this merchandise is suitable only for medicinal purposes."

The Court of International Trade upheld the reclassification. The court ruled that the amount of Vitamin C present in each drop was sufficient to cure or prevent scurvy, "[b]ut that value is not shown on the record developed to cure or prevent disease other than scurvy." Warner-Lambert, 341 F. Supp. 2d at 1280-81. The court concluded that Warner-Lambert "failed to satisfy its burden of proving that the principal use of its Halls drops corresponds to their therapeutic or prophylactic properties vis-à-vis scurvy or any other disease." Id. at 1284.

II

Customs classification rulings are not accorded Chevron deference, i.e., "[i]f a statute is ambiguous, and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs., 125

S. Ct. 2688, 2699 (2005) (citing <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council</u>, 467 U.S. 837, 843-44 (1984)). Instead, Customs classifications receive only <u>Skidmore</u> deference. <u>United States v. Mead Corp.</u>, 533 U.S. 218, 231 (2001). The "weight" such a ruling should receive "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944). <u>See also</u> <u>Warner-Lambert Co. v. United States</u>, 407 F.3d 1207, 1209 (Fed. Cir. 2005).

We conclude that the Customs' decision's "power to persuade" is substantial, and that the Court of International Trade correctly upheld that decision. Although that decision classified the pills under heading 1704 as "sugar confectionary," the dispute here turns on whether Customs' previous classification as "medicaments" under heading 3004 was correct.

As noted, heading 3004 limits "medicaments" to "mixed or unmixed products for therapeutic or prophylactic uses." Similarly, the Explanatory Note to heading 1211 which covers plants and parts of plants of a kind used in perfumery, pharmacy, or for insecticidal, fungicidal or similar purposes, states: "the term 'medicaments' within the meaning of heading 30.03 or 30.04 refers only to products which have therapeutic or prophylactic uses." While heading 3004 identifies the products it covers as "medicaments", it further limits the category to those products for specified uses. Heading 3004 thus is a "use" classification, and according to the tariff schedules' "Additional Rule of Interpretation" 1(a), "the controlling use is the principal use." <u>See Primal Lite v. United States</u>, 182 F.3d 13462, 1363-64 (Fed. Cir. 1999). Although that

Rule is preceded by the words "in the absence of special language or context which otherwise requires," that limitation "cannot be properly invoked" in the present case. "There is no special language or context here that can be said to require a reversal of the plain language" of the Additional Rule. Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1469 (Fed. Cir. 1998) (emphasis in original) (referring to subsection b).

As the Court of International Trade stated, a "use" provision is designed to "classify particular merchandise according to the ordinary use of such merchandise[.]" Warner-Lambert, 341 F. Supp. 2d at 1281 (quoting Primal Lite, 182 F.3d at 1364) and it "describ[es] articles in the manner in which they are used as opposed to by name[.]" 341 F. Supp. 2d at 1276 (quoting Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1308 (Fed. Cir. 2003)); see Primal Lite, 182 F.3d at 1363 (principal use governed where tariff statute referred to "lighting sets of a kind used for Christmas trees"). Here, "medicaments" are described by their use "for therapeutic or prophylactic" purposes.

The record supports Customs' and the Court of International Trade's conclusion that "therapeutic or prophylactic use" is not the principal use of the drops. The only disease that the drops have been shown to prevent is scurvy, which is caused by a lack of Vitamin C. Scurvy is a rare disease. In any event, the drops are not promoted or sold to cure or prevent scurvy or any other disease.

To the contrary, as the Court of International Trade stated as an uncontested fact, "the imported merchandise is not marketed as preventing or curing any diseases." Warner-Lambert's president testified that the company marketed the product "as Vitamin C and allowed [customers] to decide why they want it." The packages in which the drops were sold stated that they "help keep you going, because each drop delivers

04-1534                                            6

100% of the Daily Value of Vitamin C.  So now your family can soothe their throats with delicious, fruit flavored drops while getting the Vitamin C they need."

Customs justifiably concluded that although the merchandise "may possess medical properties, it is being marketed as much for its flavor as for its medicinal value. Thus, it cannot be said that this merchandise is suitable only for medical purposes." The drops are marketed to provide users with their requirement of Vitamin C, not to prevent or cure disease.  If the principal use of the drops were to prevent or cure disease, one would expect that their merchandising would stress that fact.  As the Court of International Trade concluded, Warner-Lambert "failed to satisfy its burden of proving that the principal use of its Halls drops corresponds to their therapeutic or prophylactic properties vis-à-vis scurvy or any other disease."

The fact that the Customs ruling resulted from a revocation of Customs' previous ruling is not a reason for denying it deference, when the ruling has the power to persuade.  Heartland By-Products, Inc. v. United States, 264 F.3d 1126, 1136 (Fed. Cir. 2001).  There, in another classifications case, we stated that a revocation ruling was entitled to Mead deference because of its "power to persuade," even though the ruling changed a prior ruling and it gave the product a different classification.  Id.  We stated that "because § 1625(c) permits Customs to revoke a prior classification of goods, inconsistency with a prior ruling is not itself a basis for denying all deference to a revocation ruling."  Id.

In National Cable, which involved Chevron deference, the Supreme Court recently stated that "if the agency adequately explains the reasons for a reversal of policy, 'change is not invalidating, since the whole point of Chevron is to leave the

discretion provided by the ambiguities of a statute with the implementing agency.'" 125 S. Ct. at 2699, citations omitted. In Chevron itself, the Court had recognized that "[a]n initial agency interpretation is not instantly carved in stone. On the contrary, the agency . . . must consider varying interpretations and the wisdom of its policy on a continuing basis." Chevron, 467 U.S. at 863-64. Although National Cable involved Chevron rather than the lesser Skidmore deference, that does not preclude according appropriate weight to the Customs' ruling.

In this case Customs "adequately explain[ed] the reasons for a reversal" of its prior ruling. It stated its understanding that "[a]dditional research indicates that Vitamin C has not been shown in the U.S. to have substances which imbue it with therapeutic or prophylactic properties or uses." Although one factor in determining Skidmore deference is the ruling's "consistency with earlier and later pronouncements," Skidmore, 323 U.S. at 140, that factor cannot be read as precluding any deference to an agency ruling that has the power to persuade, solely because it is inconsistent with an earlier one. See also Heartland By-Products, 264 F.3d at 1136.

The present case differs significantly from Warner-Lambert Co. v. United States, where this court recently rejected Customs' classification of the same importer's breath mints as a "food preparation" under a different heading, because it "lacks the power to persuade under Skidmore." 407 F.3d at 1211. There Customs' crucial ruling, which the court characterized as a "dismissive analysis," "stated simply: 'The Certs® Cool Mint Drops consist essentially of sugar.'" 407 F.3d at 1210. Here, however, Customs wrote a six-page ruling which carefully and convincingly explained the reasons for the agency's reclassification decision.

CONCLUSION

The judgment of the Court of International Trade sustaining Customs' reclassification ruling is

AFFIRMED.