**Slip Op. 04-56**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                  :

WARNER-LAMBERT COMPANY,         :

                              :

             Plaintiff,          :

                              :

                              :     Court No. 02-00254

                              :

UNITED STATES,                   :

                              :

             Defendant.          :

_____ :

         Plaintiff, Warner-Lambert Company ("WLC"), challenges the classification of its merchandise by the Bureau of Customs and Border Protection of the Department of Homeland Security ("Customs") under Harmonized Tariff Schedule of the United States ("HTSUS"), subheading 1704.90.35, 19 U.S.C. § 1202 (2000), as a sugar confectionery with a duty rate of 5.6 percent <u>ad valorem</u>. WLC claims that the imported merchandise is a sugar-free product that should be classified under HTSUS subheading 3306.90.00, which provides for preparations for oral or dental hygiene that are free of duty. Customs counterclaims that if the Court finds, as a matter of fact, that the merchandise at issue is sugar-free, then proper classification of the merchandise is under HTSUS subheading 2106.90.99, which provides for food preparations not elsewhere specified or included, dutiable at the rate of 6.4 percent <u>ad valorem</u>.

         **Held:** Pursuant to the findings of facts and conclusions of law, judgment is entered in favor of Customs on its counterclaim ordering classification of the subject merchandise under HTSUS subheading 2106.90.99 and reliquidation of the subject entries accordingly.

[Judgment is entered in favor of Customs on its counterclaim.]

                                                  June 1, 2004

         <u>Rode & Qualey</u> (<u>Patrick D. Gill</u>) for Warner-Lambert Company, plaintiff.

         <u>Peter D. Keisler</u>, Assistant Attorney General; <u>Barbara S. Williams</u>, Attorney-in-Charge, International Trade Field Office,

Civil Division, Commercial Litigation Branch, United States Department of Justice (Bruce N. Stratvert); of counsel: Chi S. Choy, Office of the Assistant Chief Counsel for International Trade Litigation, Bureau of Customs and Border Protection of the Department of Homeland Security, for the United States, defendant.

## OPINION

**TSOUCALAS, Senior Judge:** Plaintiff, Warner-Lambert Company ("WLC"), challenges the classification of its merchandise by the Bureau of Customs and Border Protection of the Department of Homeland Security ("Customs") under Harmonized Tariff Schedule of the United States ("HTSUS"), subheading 1704.90.35, 19 U.S.C. § 1202 (2000), as a sugar confectionary with a duty rate of 5.6 percent ad valorem. WLC claims that the imported merchandise is a sugar-free product that should be classified under HTSUS subheading 3306.90.00, which provides for preparations for oral or dental hygiene that are free of duty. Customs counterclaims that if the Court finds, as a matter of fact, that the merchandise at issue is sugar-free, then proper classification of the merchandise is under HTSUS subheading 2106.90.99, which provides for food preparations not elsewhere specified or included, dutiable at the rate of 6.4 percent ad valorem.

## DISCUSSION

WLC, a wholly-owned subsidiary of Pfizer, Inc., see Disclosure of Corporate Affiliations & Financial Interest, and importer of Certs® Powerful Mints ("subject merchandise"), filed a timely

protest pursuant to 19 U.S.C. § 1514 (2000) challenging classification of its merchandise. In its complaint, WLC claims that: (1) the principal active ingredient in the subject merchandise is Retsyn®, a registered trade name of plaintiff; and (2) Retsyn®, along with the other breath freshening ingredients, promotes oral and dental hygiene. See Compl. ¶ 11. A bench trial was held on March 30 and 31, 2004. In accordance with USCIT R. 52(a), the Court enters judgment in favor of defendant pursuant to the following findings of fact and conclusions of law.

## I.   Findings of Fact

1.   The merchandise at issue is Certs® Powerful Mints.

2.   The subject merchandise was described on plaintiff's invoices as Powerful Mints Spearmint, Certs® Peppermint Standard, and Certs® Spearmint Standard but all constitute Certs® Powerful Mints.

3.   The subject merchandise was classified under HTSUS subheading 1704.90.35 which reads:

| 1704 | Sugar confectionery (including white chocolate), not containing cocoa: |
|------|------------------------------------------------------------------------|
| 1704.10.00 | Chewing gum, whether or not sugar-coated . . . . . . . kg . . . . . 4% |
| 1704.90 | Other: |
| | Confections or sweetmeats ready for consumption: |
| 1704.90.10 | Candied nuts. . .kg. . .4.5% |

Other:

1704.90.25                                Cough drops. .kg. .Free

1704.90.35                                Other. . . . . . . 5.6%

4.    Certs® Powerful Mints do not contain sugar.

Customs counterclaims that if the Court finds that Certs® Powerful Mints do not contain sugar, then proper classification for the subject merchandise is under HTSUS subheading 2106.90.99, which provides for a duty rate of 6.4 percent ad valorem for "Food preparations not elsewhere specified or included: Other: Other: Other: Other: Other."

6.    The imported product is marketed and advertised and consumers perceive Certs® Powerful Mints as a breath freshening agent which combats oral malodor.

7.    Oral malodor or halitosis is commonly referred to as bad breath.

8.    The principle active ingredient in Certs® Powerful Mints is Retsyn®, a registered trade name of plaintiff.

9.    Retsyn® contains copper gluconate and partially hydrogenated cottonseed oil and flavoring agents in the form of peppermint and/or spearmint.

10.    The peppermint or spearmint flavoring agents in the imported product masks oral malodor.

11.    In 1982, the United States Food and Drug Administration ("FDA") published a monogram in the Federal Register, see Pl.'s Ex.

2, stating that the dead-space gases of a malodorous mouth consist mainly of minute traces of highly odoriferous volatile sulfur compounds, the most common and abundant of which are hydrogen sulfide and methyl mercaptan.

12. The same monogram explained that oral malodor can be controlled by masking, purging, neutralizing or bacterial inhibition.

13. Copper gluconate in Retsyn® reacts with the volatile sulfur compounds, hydrogen sulfide and methyl mercaptan to produce non-odorous materials in the oral cavity (neutralizing).

14. Micronized fat in the form of partially hydrogenated cottonseed oil absorbs sulfides and methyl mercaptan which are the main contributors to oral malodor.

15. Consumption of Certs® Powerful Mints increases salivation in the oral cavity thereby purging bacteria located in the oral cavity.

16. The subject merchandise contains an amount of copper gluconate and partially hydrogenated cottonseed oil sufficient to neutralize the quantities of volatile sulfur compounds normally present in the mouth.

17. WLC claims that the Certs® Powerful Mints are properly classifiable under HTSUS 3306.90.00 which reads:

> 3306    Preparations for oral or dental hygiene, including denture fixative pastes and powders; yarn used to

|          |                                                    |
|----------|----------------------------------------------------|
|          | clean between the teeth (dental floss), in individual retail packages: |
| 3306.10.00 | Dentifrices . . . X . . . Free |
| 3306.20.00 | Yarn used to clean between the teeth (dental floss). kg. Free |
| 3306.90.00 | Other . . . . . . kg . . . Free |

18. Certs® Powerful Mints contain sorbitol, natural flavoring (specifically Retsyn®), maltodextrin, aspartame, magnesium stearate and Blue 1. <u>See</u> Pl.'s Exs. 3, 4 (Interrog. 4).

19. Plaintiff's expert witness testified that the subject merchandise is a non-medicated, cosmetic product, Tr. 86, that has not received the American Dental Association's "Seal of Acceptance." Tr. 107.

20. The trial and pleadings lack any claim that Certs® Powerful Mints are used for therapeutic or prophylactic purposes or that they are designed to treat any specific disease.

21. Plaintiff's expert, Dr. Jack W. Vincent, testified that halitosis is commonly caused by "bacteria metabolizing protein and amino acid and emitting a highly foul smelling compound such as hydrogen sulfide, methyl mercaptan and dimethyl sulfide, among others. There is also an extrinsic source of oral malodor that most generally comes from foods that are eaten; commonly onions, garlic, . . . can leave an odor on the breath." Tr. 19.

22.  Dr. Vincent also testified that the "most effective way to control malodor is through very effective oral hygiene procedures [such as] brushing thoroughly with a dentifrice, using dental floss or another device to clean in between the teeth and also some mechanism of controlling the growth of bacteria on the tongue, most commonly done by tongue scraping.  These are activities that are ordinarily done in the home because it requires facilities in which to do it.  There are other methods that are used that are somewhat more portable in nature that can be used during the day.  Mouth rinsing is a bit more portable, but still it [is] rather cumbersome . . . . [T]here are [also] portable fresheners such as Certs products that can be used on demand, very discretely and provide the breath freshening capability for an individual at any time."  Tr. 20-21.

23.  Defendant's expert, Dr. Andrew Spielman, testified that "Certs . . . based on [the] evaluation of the scientific evidence [] do not promote oral hygiene . . . [b]ecause they do not provide mechanical removal of bacteria. They provide masking effect. They may provide some inhibition, but not to the extent that [other] oral hygiene products [provide]."  Tr. 189-191.

24.  Dr. Spielman also testified that "an oral perfume that contained anti-bacterial agent[s], would [] fit within the category of a preparation for oral or dental hygiene."  Tr. 191.

## II.  Conclusions of Law

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1581(a) (2000).  Determining whether imported merchandise was classified under the appropriate tariff provision entails a two-step process.  See Sabritas, S.A. de C.V. v. United States, 22 CIT 59, 61, 998 F. Supp. 1123, 1126 (1998).  First, the proper meaning of specific terms in the tariff provision must be ascertained.  Second, whether the imported merchandise falls within the scope of such term, as properly construed, must be determined. See Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (Fed. Cir. 1994).  The first step is a question of law and the second is a question of fact.  See id.; see also Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997). Pursuant to 28 U.S.C. § 2639(a)(1) (2000), Customs' classification is presumed correct and the party challenging the classification bears the burden of proving otherwise.  See Universal Elecs., 112 F.3d at 491.  This presumption, however, applies only to Customs' factual findings, such as whether the subject merchandise falls within the scope of the tariff provision, and not to questions of law, such as Customs' interpretation of a particular tariff provision.  See Sabritas, 22 CIT at 61, 998 F. Supp. at 1126; see also Universal Elecs., 112 F.3d at 491; Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995).  To determine whether the party challenging Customs' classification has overcome

the statutory presumption of correctness, this Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co., v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

### A.    Classification Under Heading 1704

As a preliminary matter, this Court finds that classification of Certs® Powerful Mints under HTSUS subheading 1704.90.35 is improper because the subject merchandise does not contain sugar. Therefore, the issue remains whether classification of Certs® Powerful Mints under Heading 3306 covering preparations for oral hygiene is proper.

### B.    Classification Under Heading 3306

The meaning of a tariff term is a question of law to be decided by the court. See Hasbro Indus., Inc. v. United States, 879 F.2d. 838, 840 (Fed. Cir. 1989). When a tariff term is not clearly defined in either the HTSUS or its legislative history, the correct meaning of the term is generally resolved by ascertaining its common and commercial meaning. See W.Y. Moberly, Inc. v. United States, 924 F.2d 232, 235 (Fed. Cir. 1991). In order to determine the common meaning of a tariff term, the court may rely on its own understanding of the term, as well as consult dictionaries, lexicons and scientific authorities. See Brookside

Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988), cert. denied, 488 U.S. 943 (1988).

HTSUS heading 3306 provides for preparations for oral or dental hygiene.[1] The definition of the phrase "preparations for oral hygiene" is not, per se, set forth in any standard or technical lexicon. However, the term "preparation" is defined as "1. the act or process of making ready[;] 2. a medicine made ready for use[; and] 3. an anatomic or pathologic specimen made ready and preserved for study." Dorland's Illustrated Medical Dictionary 1351 (27th ed. 1988); see Stedman's Medical Dictionary 1215 (12th ed. 1961); The Macmillan Medical Dictionary 348 (2d ed. 1953). Plaintiff and defendant's experts agree that the term "oral" pertains to the mouth and "hygiene" relates to the preservation of health. Tr. 104, 110, 190-191; see Webster's II New Riverside University Dictionary 826 (1988). "Preparations for oral hygiene," therefore, are medicines made ready for the practice of preserving the health of the mouth or oral cavity. In order for the subject merchandise to fit within this description, it must satisfy the terms of the heading. See Sabritas, 22 CIT at 62, 998 F. Supp. at 1126-27.

---

[1]    The evidence presented in plaintiff's case does not address the issue of whether Certs® Powerful Mints combat a condition pertaining to dental hygiene. Rather, plaintiff's case is limited to the claim that the subject product combats oral malodor, which WLC claims to be a condition of oral hygiene.

Trial testimony confirmed that Certs® Powerful Mints are marketed, advertised and primarily purchased by consumers as breath mints. Plaintiff's expert testified that the Retsyn®, contained in the subject merchandise, combats bad breath since copper gluconate, cottonseed oil and natural flavoring neutralize and mask bacteria in the mouth which commonly cause bad breath. Tr. 19-22. Moreover, consumption of the product results in an increase in salivation which causes a physical rinse-out or dislodgement (purging) of accumulated volatile sulfur compounds or a reduction of the number of bacteria in the mouth (specifically, a result of swallowing). Tr. 32-33. These three measures, however, are not specifically referred to in the FDA's monogram as "hygienic measures." Only antimicrobial measures, such as using a germ killing mouthwash "intended to treat or prevent disease," aide in the preservation of oral health, which is the thrust of the FDA's monogram. See Pl.'s Ex. 2, (47 Fed. Reg. at 22,844). Although the monogram recognizes that certain cosmetic products can combat oral malodor, use of such products must reach an antimicrobial result to be considered a preparation for oral or dental hygiene. See id. (stating that "articles that are cosmetic, but which are also intended to treat or prevent disease" can be considered drugs and that "[b]ecause oral malodor is caused mainly by gram-negative anaerobes, only antimicrobial ingredients known to be effective against the causative organism are effective in suppressing the

<u>malodor</u>") (emphasis added).

Neither testimony nor evidence presented establishes that Certs® Powerful Mints effect the heath of the oral cavity. Accordingly, the subject product can not be considered a preparation for oral hygiene.  WLC asks this Court to find that the Explanatory Notes to Heading 3306 cover, among other preparations, mouthwashes and oral perfumes, "thus, embracing the imported product which acts as an oral perfume."  WLC's Proposed Findings of Fact & Conclusions of Law at 7 ¶ 3.  Pursuant to Rule 1 of the General Rules of Interpretation ("GRI 1"), however, the definition and scope of terms of a particular provision is to be determined by the wording of the statute and any relevant section or chapter notes.  <u>See</u> <u>Sabritas</u>, 22 CIT at 62, 998 F. Supp. at 1126-27. The Explanatory Notes are not legally binding, although they generally indicate the proper interpretation of the HTSUS.  <u>See</u> <u>Lynteq, Inc.</u> <u>v. United States</u>, 976 F.2d 693, 699 (Fed. Cir. 1992) (quotation omitted).  The Court recognizes that the Explanatory Notes to Heading 3306 include oral perfumes in the list covering preparations for oral hygiene.  However, the Explanatory Notes do not specifically include or exclude the subject merchandise from Heading 3306.  <u>See</u> <u>Bausch & Lomb, Inc. v. United States</u>, 21 CIT 166, 174-75, 957 F. Supp. 281, 288 (1997), <u>aff'd</u>, 148 F.3d at 1363. The trial testimony revealed that many products, including an

ordinary candy mint (not containing Retsyn®), mask odor.[2]  Tr. 69-71.  Following the logic presented by plaintiff would lead to an absurd finding that the subject merchandise preserves the health of the oral cavity simply because it perfumes the mouth.  Such a finding would be anomalous to the FDA's conclusion that to be considered a preparation for oral hygiene, a product must  treat or prevent disease.  See Pl.'s Ex. 2; see also Findings of Fact ¶¶ 19, 20 (stating that Retsyn® (Certs) does not treat disease, rather it is a cosmetic product).

### C.    Classification Under Heading 2106

Customs' classification rulings are entitled to "a respect proportional to [their] 'power to persuade.'" United States v. Mead, 533 U.S. 218, 235 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).  Customs' rationale for classification of the subject merchandise under HTSUS Heading 2106 is set forth in Headquarters Ruling Letter ("HQL") 963764, dated January 11, 2002.  Customs explains:

> To be classified in heading 3306, HTSUS, the product must be described by the terms of the heading. The [Explanatory Notes] to heading 3306 identify certain types of articles which are covered by that heading. These are: dentifrices, toothpastes, denture cleaners,

---

[2]    The evidence presented by plaintiff regarding the effectiveness of Retsyn® in chemically neutralizing volatile sulfur compounds is irrelevant.  Plaintiff's expert testified that Certs® Powerful Mints are cosmetic products and that the Retsyn® they contain do not inhibit or kill bacteria.

mouth washes and oral perfumes, denture fixative pastes, powders and tablets, and yarn used to clean between the teeth (dental floss).  Breath mints are not included among this listing.  They also do not appear among the many articles used in the care of teeth and mouth enumerated in The Handbook of Nonprescription Drugs.

[Customs] do[es] not dispute the claim that the Certs® products may help reduce or control bad breath. However, they are packaged, labeled and marketed as mints.  Mints do not appear anywhere among the examples of oral health products listed by the [Explanatory Notes].

. . . .

The Certs® Powerful Mints contain only synthetic sweetening agents and cannot be classified in Chapter 17. because they contain no medicinal substances, and no claim has been made that they are intended to be used for therapeutic or prophylactic purposes, or that they are designed to treat a[] specific disease or condition, they are precluded from consideration as medicaments of Chapter 30.

. . . .

The [Explanatory Notes] to heading 21.06 state that the heading includes, inter alia, "[e]dible tablets with a basis of natural or artificial perfumes (e.g., vanillin), . . . [s]weets, gums and the like (for diabetics, in particular) containing synthetic sweetening agents (e.g., sorbitol) instead of sugar."  These exemplars describe articles akin to Certs® Powerful Mints.

HQL 963764 at 5-7 (Jan. 11, 2002).  This explanation is thorough in

its consideration and contains valid reasoning and, therefore, is

entitled to Skidmore deference.  See Mead, 533 U.S. at 218; see

also Jewelpak Corp. v. United States, 297 F.3d 1326, 1331 (Fed.

Cir. 2002); Heartland By-Prods., Inc. v. United States, 264 F.3d

1126, 1133 (Fed. Cir. 2001).  Accordingly, Customs' classification

of Certs® Powerful Mints in HQL 963764 under Heading 2106 is proper and, therefore, affirmed.

## **Conclusion**

Customs improperly classified the subject merchandise under HTSUS subheading 1704.90.35 as a sugar confectionery with a duty rate of 5.6 percent <u>ad valorem</u>. The Court finds, however, that the subject merchandise is properly classified under HTSUS subheading 2106.90.99, as a food preparation not elsewhere specified or included, dutiable at the rate of 6.4 percent <u>ad valorem</u>. Accordingly, judgment will be entered in favor of Customs on its counterclaim. Customs shall classify the imported merchandise under HTSUS subheading 2106.90.99 and reliquidate the subject merchandise accordingly.

<u>    /s/ Nicholas Tsoucalas    </u>
**NICHOLAS TSOUCALAS**
**SENIOR JUDGE**

Dated:    June 1, 2004
          New York, New York