# United States Court of Appeals for the Federal Circuit

04-1489

WARNER-LAMBERT COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Patrick D. Gill, Rode & Qualey, of New York, New York, argued for plaintiff-appellant. Of counsel on the brief were John S. Rode and Eleanore Kelly-Kobayashi.

Bruce N. Stratvert, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Barbara S. Williams, Attorney in Charge. Of counsel on the brief was Chi S. Choy, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

04-1489

WARNER-LAMBERT COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: May 11, 2005
_____

Before RADER, SCHALL, and BRYSON, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The United States Court of International Trade sustained the United States Customs Service determination to classify Warner-Lambert's imported Certs® "Powerful Mints" under Harmonized Tariff Schedule of the United States (HTSUS) subheading 2106.90.99, as a "food preparation not elsewhere specified or included." Customs had proposed this classification if the Court of International Trade found, as a matter of fact, that the mints are sugar-free. Warner-Lambert instead sought classification under HTSUS subheading 3306.90.00, "Preparations for oral or dental hygiene . . . Other," which would be free of duty. Because Customs' classification of Warner-Lambert's Certs® Powerful Mints within subheading 2106.90.99 of the Harmonized Tariff Schedules of the United States (HTSUS) does not persuade under the appropriate standard, this court reverses.

Warner-Lambert markets Certs® Powerful Mints as a product to freshen the breath, and in particular to eliminate oral malodor. The product contains sorbitol, maltodextrin, aspartame, magnesium stearate, "Retsyn®," and blue food coloring. Retsyn® contains flavoring, partially hydrogenated cottonseed oil, and copper gluconate. Warner-Lambert presented expert evidence that Certs® is "an effective breath freshening product" because it stimulates salivary flow, which controls malodor by purging. Further testimony indicated that the product contains flavors that mask malodor and copper gluconate that breaks down odor-producing volatile compounds. Finally, the product contains cottonseed oil to absorb odor-producing volatile compounds.

Customs presented expert evidence that the product does not contain ingredients considered by professionals to remove bacteria and bacterial products contributing to oral diseases. Accordingly, Customs argues that the product "does not promote oral hygiene." Customs' expert did note, however, that saliva is an effective cleansing solution that dissolves malodorous compounds and helps to mechanically remove bacteria and volatile compounds from the mouth.

The Court of International Trade considered a monograph entitled "Over-the-Counter Oral Health Care and Discomfort Drugs: Establishment of a Monograph," 47 Fed. Reg. 22,760 (May 25, 1982), published by the Food and Drug Administration (FDA). This monograph summarized the conclusions of a professional panel of the FDA that evaluated ingredients in oral health care preparations sold without prescription. The monograph stated that "hygienic measures" to control malodor

included "various cosmetic preparations, such as odoriferous mouthwashes and gargles, and lozenges. Some of the products employed contain antimicrobial and other active ingredients for which therapeutic claims are made in addition to cosmetic claims." Id. at 22,842. The monograph also stated that malodor may be controlled by purging, masking, chemical neutralization, or bacterial inhibition. Id. at 22,843-44.

The Court of International Trade weighed this evidence and consulted definitions for "preparations" and "hygiene" from medical and general dictionaries. The trial court concluded that, because "hygiene" "relates to the presence of health," preparations for oral hygiene are "medicines made ready for the practice of preserving the health of the mouth or oral cavity." Warner-Lambert Co. v. United States, 343 F. Supp. 2d 1315, 1320 (Ct. Int'l Trade 2004). Therefore, the court concluded that cosmetic products "must reach an antimicrobial result to be considered a preparation for oral or dental hygiene." Id. Because Certs® Powerful Mints do not contain an antimicrobial agent, the trial court declined to classify them as a preparation for oral hygiene under HTSUS 33.06. Id. at 1321.

II.

The parties do not dispute material facts about these imports. This court's review of their classification reduces to a determination of the proper meaning and scope of the HTSUS terms. That determination is a matter of statutory interpretation, i.e., a question of law. See SGI, Inc. v. United States, 122 F.3d 1468, 1471 (Fed. Cir. 1997). This court construes a tariff term according to its common and commercial meanings– presumably the same. To discern the commercial meaning of a tariff term, this court may consult dictionaries, scientific authorities, and other reliable information sources. See Mead Corp. v. United States, 283 F.3d 1342, 1346 (Fed. Cir. 2002). The HTSUS

Explanatory Notes themselves are not binding, but are "generally indicative of the proper interpretation of . . . the Harmonized Tariff System." Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992).

This court defers to a classification ruling by Customs following the principles in Skidmore v. Swift & Co., 323 U.S. 134 (1944). Mead Corp. v. United States, 533 U.S. 218, 219-20 (2001). Under Skidmore, the degree of deference depends on the thoroughness evident in the classification ruling; the validity of the reasoning that led to the classification; consistency of the classification with earlier and later pronouncements; the formality with which the particular ruling was established; and other factors that supply a "power to persuade." Skidmore, 323 U.S. at 140. Although according deference, this court has an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms. See Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001).

III.

The terms in HTSUS determine the scope of the imports covered by the categories. Heading 33.06 provides for:

> Preparations for oral or dental hygiene, including denture fixative pastes and powders; yarn used to clean between the teeth (dental floss), in individual retail packages: Dentifrices: Yarn used to clean between the teeth (dental floss): Other.

The court below found that the phrase "preparations for oral or dental hygiene" is not defined in any standard or technical lexicon. For guidance on this phrase, the court resorted to the FDA monograph, which states, as noted above, that the use of odoriferous cosmetic preparations without antimicrobial agents is a hygienic measure. See Monograph, at 22,842. The monograph states that "only antimicrobial ingredients

04-1489                                    4

known to be effective against the causative microorganisms are effective in suppressing the malodor," Id. at 22,844, but it does not state anywhere that "hygiene" requires antimicrobial action. The trial court, not the monograph, connected "health" with "hygiene." Nothing in the monograph, or in the dictionaries consulted by the court, requires that identification. "Hygiene" might lead to "health"--but it is not "health" itself. The trial court simply read too much into the monograph.

Further, the court's interpretation discounts both the Explanatory Notes to Chapter 33 and the examples in Heading 33.06 itself. The Chapter Notes specify that the products of Heading 33.06 need not "contain subsidiary pharmaceutical or disinfectant constituents," nor be held out "as having therapeutic or prophylactic value." World Customs Organization, Harmonized Commodity Description and Coding System 613 (3d ed. 2002). The Explanatory Note to Heading 33.06 further specifies that the heading encompasses "[m]outh washes and oral perfumes." Id. at 620. Therefore, the Notes accompanying this heading do not require antimicrobial agents in "preparations for oral or dental hygiene." To the contrary, the Notes expressly encompass "oral perfumes" within the heading. In sum, the Court of International Trade went too far in requiring that a product under Heading 33.06 include an antimicrobial agent.

IV.

As noted earlier, Customs proposed to classify Certs® Powerful Mints under HTSUS Heading 2106.90.99. In assessing the deference appropriate for this action, this court examines Headquarters Ruling Letter No. HQ 963764 of January 11, 2002. In HQ 963764 Customs considered the appropriateness of classifying Certs® Powerful Mints under Headings 17.04 ("sugar confectionery . . . not containing cocoa"); 21.06

("[f]ood preparations not elsewhere specified or included"); and 33.06 ("preparations for oral or dental hygiene"). Customs also based its decision on the FDA monograph, The Random House Dictionary of the English Language (n.d.), and the Explanatory Notes. In its analysis of the FDA monograph, Customs did not acknowledge that the monograph does not require a malodor preparation to contain an antimicrobial agent, although the monograph does not suggest that only antibacterial products are "hygienic." Further, although Customs quoted the dictionary definition of "hygiene" as "a condition or practice conducive to the preservation of health, as cleanliness," it overlooked the uncontested facts that Certs® Powerful Mints effect a cleansing action.

To justify its proposed classification under Headings 17.04 or 21.06, Customs stated simply: "The Certs® Cool Mint Drops consist essentially of sugar." HQ 963764, at 7. This dismissive analysis neglects not only those chemical components of the mints which achieve the breakdown and absorption function, but also the cleansing effect of the purging activity. In sum, Customs' proposed classification carried little power to persuade because it overlooked some characteristics of the imports and read the term "hygiene" too narrowly to remain consistent with the Explanatory Notes.

V.

For these reasons, this court holds that Warner-Lambert's Certs® Powerful Mints properly fall under heading 33.06 of the HTSUS. The justification for Customs' desired alternative classification lacks the power to persuade under Skidmore. Because the imported articles belong under Heading 33.06 of the HTSUS, this court reverses the decision of the Court of International Trade.

04-1489                                6

COSTS

Each party shall bear its own costs.

## REVERSED