Slip Op. 07-134

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

|  |  |  |
|---|---|---|
| DRYGEL, INC., | : | |
| Plaintiff, | : | |
| | : | Court No.: 03-00832 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**Held:** Plaintiff's motion for summary judgment denied. Summary judgment is granted in favor of the Defendant.

Dated: September 4, 2007

Neville Peterson, LLP, (John M. Peterson, Curtis W. Knauss and Maria E. Celis) for Drygel, Inc., Plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S Williams, Attorney-in-Charge, International Trade Field Office, Bruce N. Stratvert, Civil Division, Commercial Litigation Branch, United States Department of Justice, Defendant.

## OPINION

**TSOUCALAS, Senior Judge:** Plaintiff Drygel, Inc. ("Plaintiff" or "Drygel") challenges the classification of Gel-A-Mint® MagikStrips® ("MagikStrips®") by the United States Bureau of Customs and Border

Protection[1] ("Defendant" or "Customs") under Subheading 2106.90.99 of the Harmonized Tariff Schedule of the United States ("HTSUS") covering "[f]ood preparations not elsewhere specified or included[.]" Plaintiff maintains that the merchandise at issue is properly classified under Subheading 3306.90.00, HTSUS, as "preparation for oral or dental hygiene." This matter is before the court on cross-motions for summary judgment pursuant to USCIT R. 56.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581 (2000).

## STANDARD OF REVIEW

On a motion for summary judgment, the Court must determine whether there are any genuine issues of fact that are material to the resolution of the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if it might affect the outcome of the suit under the governing law. See id.

---

[1]     The Bureau of Customs and Border Protection was renamed United States Customs and Border Protection, effective March 31, 2007. See Name Change From the Bureau of Immigration and Customs Enforcement to U.S. Immigration and Customs Enforcement, and the Bureau of Customs and Border Protection to U.S. Customs and Border Protection, 72 Fed. Reg. 20,131 (April 23, 2007).

Accordingly, the Court may not decide or try factual issues upon a motion for summary judgment. See Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988). When genuine issues of material fact are not in dispute, summary judgment is appropriate if a moving party is entitled to judgment as a matter of law. See USCIT R. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

### I. Background

MagikStrips® are thin, sugar-free breath strips that dissolve when placed on the tongue, releasing their ingredients. See Mem. Supp. Pl.'s Mot. Sum. J. ("Drygel's Brief") at 1-2; Pl.'s Statement Material Facts Not Dispute ("Drygel's Facts") ¶ 2. Magikstrips® are manufactured in Japan and are packaged in small plastic containers for individual sale at retail stores. See Drygel's Brief at 2; Drygel's Facts ¶¶ 1, 8; Def.'s Resp. Pl.'s Statement of Material Facts Not Dispute ("Customs' Facts") ¶¶ 1, 8.

Plaintiff Drygel imported MagikStrips® under Subheading

3306.90.00, HTSUS.[2]  See Drygel's Facts ¶ 2; Customs' Facts ¶ 2. Customs liquidated the subject merchandise under Subheading 2106.90.99, HTSUS.[3]  See Drygel's Facts ¶ 2; Custom's Facts ¶ 2. Plaintiff timely filed protests claiming that the correct classification of the subject merchandise is under Subheading 3306.90.00, HTSUS, contesting Customs' classification under Subheading 2106.90.99, HTSUS.  See Drygel's Facts ¶ 3; Customs' Facts ¶ 3.  Plaintiff timely commenced the instant action.  See Drygel's Facts ¶ 3; Customs' Facts ¶ 4.  All liquidated damages, charges and exactions with respect to the subject entries were paid prior to the commencement of this action.  See Drygel's Facts ¶ 5; Customs' Facts ¶ 5.

---

[2]    Heading 3306, HTSUS, provides:
"[p]reparation for oral or dental hygiene, including denture fixative pastes and powders; yarn used to clean between the teeth (dental floss), in individual retail packages[.]"

     Subheading 3306.90.00, provides:  "[o]ther[.]"

[3]    Heading 2106, HTSUS, provides:
"[f]ood preparations not elsewhere specified or included[.]"

     Subheading 2106.90, provides:  "[o]ther[.]"

     Subheading 2106.90.99, provides:  "[o]ther[.]"

## II. Parties' Contentions

### A. Plaintiff's Contentions

Plaintiff maintains that Customs erred when it classified MagikStrips® under Heading 2106, HTSUS, because MagikStrips® are specifically provided for in Heading 3306, HTSUS.  See Drygel's Brief at 7-13.  According to Plaintiff, Customs failed to follow the General Rules of Interpretation of the HTSUS ("GRIs") and failed to employ the common commercial meaning of the tariff terms when classifying MagikStrips.®  See Drygel's Brief at 7-9. Plaintiff submits that the term hygiene encompasses health and cleanliness and concludes that "reduction of volatile compounds in the mouth" and the "masking of malodor or perfuming of the mouth" would promote oral hygiene.  Drygel's Brief at 8.

Plaintiff claims that menthol represents 5% of Magikstrips'® dry weight with an error margin of 3%.[4]  See Drygel's Brief at 8;

---

[4]      In its motion, Plaintiff initially claimed that MagikStrips® contain menthol at the concentration of 15% of their dry weight.  See Drygel's Brief at 2; Zaksenberg I Affirmation ¶ 5. Plaintiff further claimed that MagikStrips® contain citric acid, which"promote[s] the production of saliva which acts to cleanse the mouth through the reduction of the amount of bacteria." Zaksenberg I Affirmation ¶ 6.  However, Customs' laboratory analysis of MagikStrips® revealed that they consist of only 5% percent menthol with an error margin of 3%.  See Customs' Brief, Exhibit 2.  The laboratory test did not detect any citric acid in MagikStrips.® See id.

At the oral argument held before this court on July 10, 2007, Plaintiff changed its position arguing that menthol at the
(footnote continued)

Affirmation Issac Zaksenberg Supp. Pl.'s Mot. Sum. J. ("Zaksenberg I Affirmation") ¶ 5. According to Plaintiff, menthol at this concentration has antimicrobial properties and acts as a deodorizer that perfumes the mouth. See id. Plaintiff also claims that MagikStrips® contain sucrose palmitate or sucrose esters of fatty acid, which also has antimicrobial properties. See Pl.'s Resp. Def.'s Rule 56 Statement ¶ 1; Second Affirmation Issac Zaksenberg Supp. Pl.'s Mot. Sum. J. ("Zaksenberg II Affirmation") ¶ 5.

In support of its claim, Plaintiff cites the patent for a similar competing product named Listerine® "fast dissolving orally consumable films" ("Listerine® Patent"). See Drygel's Brief at 8-9, Exhibit C. The Listerine® Patent provides, inter alia, that Listerine® "achieves its antimicrobial effect through a combination of essential oils that penetrate and kill the microorganisms." Drygel's Brief, Exhibit C. Plaintiff notes that menthol is one of the essential oils listed in the Listerine® Patent. See Drygel's Brief at 8. Arguing that MagikStrips® contain a high concentration of menthol, Plaintiff concludes that MagikStrips® have antimicrobial properties and promote oral hygiene. See id. Plaintiff also relies on several websites to support its

---

concentration of 5%, plus or minus 3%, was sufficient to impart antimicrobial properties and to perfume the mouth. Also at the oral argument, Plaintiff argued that MagikStrips® are classifiable under Heading 3306 solely based on their menthol content. Notably, Plaintiff did not dispute the results of Customs' laboratory test.

proposition that MagikStrips'® ingredients, menthol and sucrose palmitate or sucrose esters of fatty acid, have antimicrobial properties. See Drygel's Brief at 9, Exhibits D, E; Pl.'s Resp. Def.'s Mot. Sum. J. ("Drygel's Response") at 4; Zaksenberg II Affirmation ¶ 5.

In addition, Plaintiff contends that the Explanatory Notes ("ENs") specifying mouth washes and oral perfumes provide strong support for classifying MagikStrips® under Heading 3306, HTSUS. See Drygel's Brief at 9-10. Plaintiff states that MagikStrips® perform the same function as a traditional mouth wash by reducing the number of bacteria and volatile compounds. See id. at 10. Plaintiff also states that, by stimulating saliva production in the mouth, MagikStrips® act as an effective oral perfume that masks malodor and imparts mint fragrance. See id. Plaintiff thus concludes that MagikStrips® are an effective mouth wash and oral perfume as contemplated in the ENs for Heading 3306, and argues that MagikStrips® should be classified under that heading. See id. at 3, 10-11.

Plaintiff argues that the United States Court of Appeals for the Federal Circuit ("CAFC") would, pursuant to its decision in Warner-Lambert Co. v. United States ("Warner-Lambert CAFC"), 407 F.3d 1207 (Fed. Cir. 2005), classify MagikStrips® under Heading 3306, HTSUS. See Drygel's Brief at 11. Plaintiff contends that

Customs, when citing to Warner-Lambert CAFC for the proposition
that Heading 3306 requires "breakdown and absorption of unwanted
substances in the mouth" and "a cleansing effect by purging
activity," mischaracterizes the CAFC's holding. Drygel's Response
at 1-4. According to Plaintiff, Warner Lambert CAFC stands for the
proposition that a product may be properly classified under Heading
3306 if: (1) it is an oral perfume; (2) it breaks down or removes
volatile compounds in the mouth; or (3) it mechanically purges
odor-causing compound in the mouth. See Drygel's Brief at 12.
Plaintiff argues that MagikStrips® meet the criteria set forth in
Warner-Lambert CAFC because menthol and sucrose palmitate remove
bacteria and perfume the mouth. See Drygel's Brief at 12-13;
Drygel's Response at 4.

In response to Customs' assertion, discussed supra, that
Heading 3306 is a "use provision" requiring determination of the
principal use of the "class or kind" of goods to which MagikStrips®
belong, Plaintiff argues that Customs' analysis is flawed due to
its erroneous interpretation of Warner-Lambert CAFC. Drygel's
Response at 8-9. Plaintiff contends that Customs' "class or kind"
analysis is too narrow and contrary to the holding in Warner-
Lambert CAFC. See id.

With respect to classification of MagikStrips® under Heading
2106, HTSUS, as urged by Customs, Plaintiff responds that the terms

of the Heading, when read in accordance with GRI 1, excludes products that are covered under other headings in the tariff schedule. See Drygel's Brief at 13-14. Since Heading 2106 covers "food preparations not elsewhere specified or included," Plaintiff argues that the Heading specifically excludes MagikStrips® which are classifiable under Heading 3306. See id. at 14. In the event that MagikStrips® are classifiable under both Headings 2106 and 3306, Plaintiff argues that, pursuant to GRI 3, Heading 3306 is the proper classification because it provides a more specific description in comparison to Heading 2106, a catch-all provision. See id.

Based on the foregoing arguments, Plaintiff seeks a judgment in its favor and an order directing the Port Director of Customs at the Port of Entry to reliquidate the subject entries under HTSUS subheading 3306.90.00, duty free, and refunding to Plaintiff all excess duties, plus interest as provided by law.

## B. Customs' Contentions

Customs contends that MagikStrips® are properly classified under Subheading 2106.90.99, HTSUS, the provision for "[f]ood preparations not elsewhere specified or included[.]" See Def.'s Mem. Supp. Mot. Summ. J. and Opp. Pl.'s Mot. Summ. J. ("Customs' Brief") at 2.

Customs argues that the applicable portion of Heading 3306, "preparation for oral and dental hygiene," is controlled by use, and thus, is a "use provision." Id. at 5-6.  Accordingly, Customs states that the terms of the heading must read to mean "preparation for use in oral and dental hygiene." Id. at 6.  In addition, Customs argues that GRI 1 must be applied together with rule 1(a) of the Additional U.S. Rules of Interpretation[5] ("ARIs"), which govern tariff classification of imported merchandise under "use provisions." See id.  According to Customs, proper application of ARI 1(a) requires determination of "the class or kind to which the imported goods belong" and the "principal use of that class or kind of goods at, or immediately prior to the date of importation." Id. at 6-7.  Customs explains that, pursuant to United States v. Carborundum Co., 63 CCPA 98, 102, 536 F.2d 373, 377 (1976), the relevant factors to consider in making such determinations are: (1) the general physical characteristics of the merchandise, (2) the expectation of the ultimate purchasers, (3) the channels, class or kind of trade in which the merchandise moves, (4) the environment of the sale, (5) the use, if any, in the same manner as

---

[5]     ARI 1(a), provides,:

> [A] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is principal use[.]

merchandise which defines the class, (6) the economic practicality of so using the import, and (7) the recognition in the trade of this use. See id. at 7. Based upon an analysis of these factors, Customs concludes that MagikStrips® are in the same "class or kind" as chewing gums and mints rather than preparations for oral and dental hygiene, and as such, Customs argues that MagikStrips® are not classifiable under Heading 3306. See id. at 18.

According to Customs, Warner-Lambert CAFC did not address the "class or kind" of goods classifiable under Heading 3306, HTSUS, but held that "goods classified in that heading as 'preparations for oral or dental hygiene' must be able to achieve the breakdown and absorption of unwanted substances in the mouth and provide a cleansing effect by purging activity[.]" Id. at 7. Customs claims that MagikStrips® do not satisfy the criteria set forth in Warner-Lambert CAFC "inasmuch as they do not have any ingredients that are capable of breakdown, absorption, or facilitation of the purging activity" and concludes that MagikStrips® cannot not be classified under HTSUS Heading 3306 as "preparations for oral or dental hygiene." Id.

In support of its position, Customs argues that Plaintiff relies on unreliable websites in an attempt to establish the antimicrobial properties of menthol. See id. at 10. Customs further argues that proof put forth by Plaintiff to establish the alleged antimicrobial properties of sucrose palmitate or sucrose

esters of fatty acid merely states that the ingredient may be used as "bacteriocidal agents for canned coffee" and does not support the conclusion that MagikStrips® have antimicrobial properties. Def.'s Reply Br. Supp. Mot. Summ. J. and Opp'n Pl.'s Resp. ("Customs' Reply") at 2.   While conceding that menthol in combination with other ingredients may be effective as an antimicrobial agent, Customs contends that Plaintiff failed to put forth any evidence that menthol by itself has antimicrobial properties.  See Customs' Brief at 11.   Customs counters that menthol is best known as a mild topical anesthetic and mint flavoring.  See Customs' Brief at 11.   Customs notes that even Plaintiff's own documents confirm that menthol is "only used as flavor" and sucrose palmitate is used as an "emulsifier."  Customs' Brief at 11, Exhibit 3; Customs' Reply at 3.

Moreover, Customs maintains that Plaintiff's reliance on Warner-Lambert CAFC for the proposition that MagikStrips® are classifiable under Heading 3306 as a mouth wash or oral perfume is misplaced.  See Customs' Brief at 8-9.  Customs suggests that, since the terms "mouth washes" and "oral perfumes" appear in the ENs only and are not expressly provided for in either Heading 3306 or the subheadings thereto, they are not legally binding.  See id. at 9. Customs concludes that MagikStrips® therefore do not satisfy the criteria set forth in Warner-Lambert CAFC and argues that they cannot be classified under Heading 3306, HTSUS, as "preparations

for oral or dental hygiene." See id. at 7. Instead, Customs urges the Court to find that MagikStrips® are properly classified under Heading 2106, HTSUS. See id. at 18-19.

## III. Discussion

### A. Introduction

The question presented in the instant matter is whether, within the meaning of the tariff provisions, the imported merchandise is dutiable as "food preparation not elsewhere specified or included" under Heading 2106 as classified by Customs, or as "preparation for oral or dental hygiene" under Heading 3306 as claimed by Plaintiff.

Determining whether imported merchandise was classified under the appropriate tariff provision entails a two-step process. See Sabritas, S.A. de C.V. v. United States, 22 CIT 59, 61, 998 F. Supp. 1123, 1126 (1998). First, the proper meaning of specific terms in the tariff provision must be ascertained. See Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (Fed. Cir. 1994). Second, whether the imported merchandise falls within the scope of such term, as properly construed, must be determined. See id. The first step is a question of law and the second is a question of fact. See id.; see also Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997). Where, as in

the instant case, there is no disputed material issue of fact to be resolved by trial, disposition by summary judgment is appropriate.

Pursuant to 28 U.S.C. § 2639(a)(1) (1994), Customs' classification is presumed correct and the party challenging the classification bears the burden of proving otherwise. See Universal Elecs., 112 F.3d at 491. This presumption, however, applies only to Customs' factual findings, such as whether the subject merchandise falls within the scope of the tariff provision, and not to questions of law, such as Customs' interpretation of a particular tariff provision. See Sabritas, 22 CIT at 61, 998 F. Supp. at 1126; see also Universal Elecs., 112 F.3d at 492; Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995). When there are no material issues of fact in dispute, as is admitted by both parties in the present case, the statutory presumption of correctness is irrelevant. Goodman Mfg., 69 F.3d at 508.

Pursuant to 28 U.S.C. § 2640(a) (1994), Customs' classification decision is subject to de novo review based upon the record before the Court. Accordingly, the Court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

## B. Classification Under Heading 3306

Applied in numerical order, the proper classification of merchandise entering the United States is directed by the GRIs and the ARIs. See N. Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001); Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." Gen. R. Interp. 1, HTSUS; see also Sabritas, 22 CIT at 62, 998 F. Supp. at 1126-27. Only after comparing headings, if a question persists, may the Court look to the subheadings for the correct classification. See Orlando Food, 140 F.3d at 1440.

When a tariff term is not clearly defined in either the HTSUS or its legislative history, the correct meaning of the term is generally resolved by ascertaining its common and commercial meaning. See W.Y. Moberly, Inc. v. United States, 924 F.2d 232, 235 (Fed. Cir. 1991). In order to determine the common meaning of a tariff term, the court may rely on its own understanding of the term, as well as consult dictionaries, lexicons and scientific authorities. See Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988), cert. denied, 488 U.S. 943 (1988).

Heading 3306, HTSUS, provides for "preparations for oral or dental hygiene[.]" The parties do not dispute that these terms are not specifically defined in the HTSUS or in relevant legislative

history. See Drygel's Brief at 8; Customs' Brief at 5. This Court and the CAFC have previously considered the tariff terms "preparations for oral or dental hygiene." In Warner-Lambert Co. v. United States ("Warner-Lambert CIT"), 28 CIT __, 343 F. Supp. 2d 1315, (2004), the Court of International Trade ("CIT") considered classification of Certs® Powerful Mints under Heading 3306 as "preparation for oral or dental hygiene." Warner-Lambert CIT, 28 CIT at __, 343 F. Supp. 2d at 1319-21. The CIT determined that: (1) the term "preparation" is defined as "a medicine made ready for use," see Dorland's Illustrated Medical Dictionary 1351 (27th ed. 1988); Stedman's Medical Dictionary 1215 (12th ed. 1961); The Macmillan Medical Dictionary 348 (2d ed. 1953); (2) the term "oral" pertains to the mouth; and (3) the term "hygiene" relates to the preservation of health, see Webster's II New Riverside University Dictionary 826 (1988). See Warner-Lambert CIT, 28 CIT at __, 343 F. Supp. 2d at 1319-20. The CIT thus concluded that "preparations for oral hygiene" are "medicines made ready for the practice of preserving the health of the mouth or oral cavity." Warner-Lambert CIT, 28 CIT at __, 343 F. Supp. 2d at 1320. Relying on a monogram issued by the United States Food and Drug Administration, 47 Fed. Reg. 22,760 (May 25, 1982), stating that "[o]nly antimicrobial measures, such as using a germ killing mouth wash 'intended to treat or prevent disease' aide in the preservation of oral health," the CIT found that a product must have antimicrobial properties to

be properly classified under Heading 3306.  Warner-Lambert CIT, 28

CIT at __, 343 F. Supp. 2d at 1320.  Finding that Certs® Powerful

Mints do not have such antimicrobial properties, the CIT held that

they are not properly classified under Heading 3306, HTSUS.

Warner-Lambert CIT, 28 CIT at __, 343 F. Supp. 2d at 1320.

The CAFC overturned Warner-Lambert CIT and held that Certs®

Powerful Mints do fall under Heading 3306.  See Warner-Lambert

CAFC, 407 F.3d 1207 (Fed. Cir. 2005).  The CAFC concluded that the

term "hygiene" in Heading 3306 does not require an antimicrobial

agent and determined that the CIT improperly connected "health"

with "hygiene."  See Warner-Lambert CAFC, 407 F.3d at 1210.  In

reaching that conclusion, the CAFC relied on the Chapter Notes

stating that "the products of Heading 3306 need not contain

subsidiary pharmaceutical or disinfectant constituents nor be held

out as having therapeutic or prophylactic value."  Id.  In

addition, the CAFC noted that the ENs specify mouth washes and oral

perfumes.  Id.  However, in denying Customs' alternative

classification under Heading 2106 and finding that Certs® Powerful

Mints are properly classified under Heading 3306, the CAFC

specifically referred to and relied on the cleansing action of

Certs® Powerful Mints.  Id.

Warner-Lambert CAFC thus instructs that the term "hygiene"

requires a cleansing action such as the "breakdown and absorption

function" and "cleaning effect of the purging activity" of Certs®

Powerful Mints. Because MagikStrips® do not have the requisite cleansing properties as set forth in Warner-Lambert CAFC, they are not properly classifiable under Heading 3306. The ENs specify oral perfumes and mouth washes, but the ENs are non-binding interpretive guide. See Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994).

Although Heading 3306 does not require an antimicrobial agent, the parties agree that a product containing an antimicrobial agent capable of reducing the number of bacteria in the mouth is properly classifiable under Heading 3306. See Drygel's Brief at 7-9; Customs' Brief at 12. Plaintiff, however, has failed to establish that MagikStrips® have any antimicrobial properties. The bare allegation contained in a self-serving affidavit submitted by the President of Drygel stating that MagikStrips® reduce the number of bacteria in the mouth is unconvincing. See Zaksenberg I Affirmation ¶ 5; Zaksenberg II Affirmation ¶ 5.

Moreover, Plaintiff's reliance on the Listerine® Patent is misplaced. The Listerine® Patent provides, inter alia, that the product "achieves its antimicrobial effect through a combination of essential oils that penetrate and kill the microorganisms." (emphasis added). Drygel's Brief, Exhibit C. The fact that menthol is one of several ingredients that work in combination to impart its antimicrobial effect does not support the contention that menthol by itself would have the same effect.

The websites to which Plaintiff cites contain only conclusory statements and are devoid of factual support for the contention that MagikStrips'® ingredients at their particular concentrations have antimicrobial properties. Indeed, it appears that Plaintiff's claim of MagikStrips'® antimicrobial properties is an afterthought. Even Plaintiff's own internal documents, packaging and marketing materials make no mention of MagikStrips'® alleged antimicrobial properties. See Drygel's Brief, Exhibits A, B; Customs' Brief, Exhibits 3, 4, 5, 11. Those materials confirm that menthol is "only used as flavor" and that sucrose palmitate or sucrose esters of fatty acid is used as an emulsifier. Id.

Based on the foregoing, MagikStrips® are not specifically provided in Heading 3306. Accordingly, it is unnecessary for the court to determine whether the term "preparation for oral or dental hygiene" in Heading 3306 is a "use provision" or to undertake an analysis of Heading 3306 as a "use provision" as argued by Customs.

**C. Classification Under Heading 2106**

Heading 2106, HTSUS, covers "[f]ood preparations not elsewhere specified or included[.]" The term "preparation" is defined as "a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences." 12 The Oxford English Dictionary 374 (2d. ed. 1989). The term "food" is defined as "[w]hat is taken into the system to maintain life and growth, and to supply the waste of tissue; aliment,

nourishment, provisions, victuals." 6 <u>The Oxford English Dictionary</u> 8 (2d. ed. 1989). The ENs for this Heading clarify that "this heading covers: (1) preparations for . . . human consumption." Therefore, "food preparations" are substances prepared for human consumption.

Customs correctly determined that MagikStrips® are properly classified under Heading 2106, HTSUS. They are "food preparations" and not elsewhere specified or included. This determination is further supported by the ENs, which state that this Heading includes, <u>inter alia</u>, "[e]dible tablets with a basis of natural or artificial perfumes (e.g. vanillin)" and "[s]weets, gums and the like (for diabetics, in particular) containing synthetic sweetening agents (e.g., sorbitol), instead of sugar[.]" MagikStrips® are consumed for their sweet taste and mint flavor much like mints, sweets or gums. <u>See</u> Zaksenberg I Affirmation ¶¶ 5, 7. Plaintiff suggests that MagikStrips® are not edible because they "were designed and manufactured to dissolve very quickly in the mouth[.]" Zaksenberg I Affirmation ¶ 10. Regardless of how quickly MagikStrips® dissolve in the mouth, they are nevertheless ingested and consumed.

Plaintiff also argues that Heading 2106 specifically excludes products specified under other headings and claims that MagikStrips® are specifically excluded because they are classifiable under Heading 3306. <u>See</u> Drygel's Brief at 13-14.

This court rejects Plaintiff's argument having already determined that MagikStrips® are not specifically provided for under Heading 3306, HTSUS. Thus, consistent with the common commercial meaning of the term "food preparation" and based on the ENs, MagikStrips® are properly classifiable under Heading 2106.

A review of the subheadings of Heading 2106 indicate that no other subheading covers the merchandise more specifically than the "catch-all" provision under Subheading 2106.90.99 covering "[o]ther[.]" See EM Indus. v. United States, 22 CIT 156, 165, 999 F. Supp. 1473, 1480 (1998); Orlando Food, 140 F.3d at 1442. Based on the foregoing, the court concludes that Customs correctly classified the subject merchandise under Subheading 2106.90.99, HTSUS.

## Conclusion

For the foregoing reasons, the Court holds that Customs correctly classified MagikStrips® under subheading 2106.90.99, HTSUS. Accordingly, Plaintiff's motion for summary judgment is denied. Summary judgment is granted in favor of the United States.

                                        _____/s/ Nicholas Tsoucalas___
                                            NICHOLAS TSOUCALAS
                                            SENIOR JUDGE

Dated:     September 4, 2007
           New York, NY

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

DRYGEL, INC.,

        Plaintiff,

        v.

UNITED STATES,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:

Court No.:  03-00832

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED, ADJUDGED and DECREED** that the United States Bureau of Customs and Border Protection correctly classified the subject merchandise under Subheading 2106.90.99 of the Harmonized Tariff Schedule of the United States; and it is further

**ORDERED** that the United States' cross-motion for summary judgment pursuant to USCIT R. 56 is granted; and it is further

**ORDERED** that Drygel's motion for summary judgment pursuant to USCIT R. 56 is denied; and it is further

**ORDERED** that this case is dismissed.

Dated:    September 4, 2007
        New York, New York

                                 /s/ Nicholas Tsoucalas
                                  NICHOLAS TSOUCALAS
                                  SENIOR JUDGE